IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**MICHELLE M. CAMPBELL,**                                    Case No. 2:14-CV-00956-SU

          Plaintiff,                                    **FINDINGS AND RECOMMENDATIONS**

          v.

**CAROLYN W. COLVIN,**
Commissioner of Social Security,

                    Defendant.

SULLIVAN, Magistrate Judge:

          Michelle M. Campbell ("plaintiff") brings this action pursuant to the Social Security Act (the

"Act"), 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of

Social Security (the "Commissioner"). The Commissioner denied plaintiff's application for Title

XVI Supplemental Security Income benefits ("SSI") under the Act. For the reasons set forth below,

the Commissioner's decision should be affirmed and this case should be dismissed.

## PROCEDURAL BACKGROUND

On March 30, 2011, plaintiff filed a Title XVI application for SSI, alleging a disability onset date of January 1, 1984,[1] which plaintiff later amended to March 30, 2011. Tr. 62, 173. After the application was denied initially and upon reconsideration, plaintiff requested a hearing before an administrative law judge ("ALJ"). Tr. 112–14. On November 27, 2012, an ALJ hearing was held . Plaintiff testified and was represented by counsel. Tr. 18, 31–62. At the hearing, a vocational expert ("VE") also testified telephonically. Tr. 34, 57–62. On December 5, 2012, the ALJ issued a decision finding plaintiff not disabled within the meaning of the Act. Tr. 18–26. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. Tr. 5–7. After receiving a 45-day extension, plaintiff filed an appeal in this Court. Tr. 1–4.

## FACTUAL BACKGROUND

Born on April 18, 1972, plaintiff was almost 39 years old on the alleged onset date and was 40 years old at the time of the hearing. Tr. 173. Plaintiff dropped out of school after the eighth grade and has not obtained a GED. Tr. 36, 168. Plaintiff does not have past relevant work experience. Tr. 25, 168–69. She alleges disability beginning March 30, 2011, due to back pain, high blood pressure, overactive bladder, plantar fasciatus, depression, and obesity. Tr. 167.

## STANDARD OF REVIEW

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d

---

[1] The early onset date was as a result of a back injury when plaintiff was 12 years old.

498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 680–81 (9th Cir. 2005) (the court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation").

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 416.920. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. § 416.920(b).

At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. § 416.920(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141.

At step three, the Commissioner determines whether the impairment meets or equals "one

Page 3 - FINDINGS AND RECOMMENDATION

of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Id.*; 20 C.F.R. § 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant can still perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. § 416.920(e). If the claimant can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 141. At step five, the Commissioner must establish that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 142; 20 C.F.R. § 416.920(e) & (f). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 416.966.

## THE ALJ'S FINDINGS

At step one of the sequential evaluation process outlined above, the ALJ found that plaintiff had not engaged in substantial gainful activity since the application and alleged onset date of March 30, 2011. Tr. 20. At step two, the ALJ determined plaintiff had severe and non-severe impairments. Tr. 20–22. Specifically, he found the following impairments severe: obesity, mild degenerative disc disease of the lumbar spine with atypical peripheral neuropathy type complaints, hypertension, and affective disorder. Tr. 20. He also found plaintiff's history of alcohol abuse, personality disorder, restless leg syndrome, and carpal tunnel syndrome were non-severe impairments. Tr. 20–22. At step three, the ALJ found that plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 22–23.

Because plaintiff did not establish presumptive disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected her ability to work. The ALJ resolved that plaintiff had

the residual functional capacity ("RFC") to perform

> less than the full range of light work as defined in 20 C.F.R.
> 416.967(b). Exertionally, the claimant can lift and carry up to 10-
> pounds frequently and up to 20-pounds occasionally. She can sit,
> stand and walk up to 6-hours in each activity (cumulatively, not
> consecutively) in an 8-hour workday with normal breaks. Her
> nonexertional limitations are that she can occasionally crawl and
> bilateral foot controls. The claimant can frequently climb stairs and
> equivalent ramps, as well as frequently do balancing, stooping,
> kneeling and crouching. However, she cannot climb ropes, ladders,
> and scaffolding. She is also limited to simple, routine type work.

Tr. 23.

At step four, the ALJ found that plaintiff has no past relevant work. Tr. 25. At step five, the ALJ determined that plaintiff could perform a significant number of jobs existing in the national and local economy despite her impairments, such as survey worker, office cleaner, and mail clerk. Tr. 25. Accordingly, the ALJ concluded that plaintiff was not disabled under the Act. Tr. 26.

## DISCUSSION

Plaintiff argues the ALJ erred by (1) failing to include all of her impairments at step two; (2) rejecting the opinion of consultative examiner Lance Brigman, M.D.; and (3) rejecting plaintiff's subjective complaints.

I.    Step-Two Finding

Plaintiff first argues the ALJ erroneously excluded plaintiff's additional impairments of incontinence, restless leg syndrome, and carpal tunnel syndrome at step two. The Commissioner determines at step two whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. § 416.920(c). The severity determination at

step two of the sequential evaluation requires a determination that (1) the impairment results from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques; and (2) the severity must be such that it significantly decreases the physical or mental ability of a person to perform basic work activities. 20 C.F.R. §§ 416.908, 416.920. The impairment "must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms." *Id.* at § 416.908 (citation omitted). The two-step analysis is a "de minimis screening device to dispose of groundless claims," and requires the ALJ to consider the combined effect of all of the claimant's impairments, regardless of whether each impairment alone was sufficiently severe. *Edlund v. Massanari*, 253 F.3d 1152, 1158 (9th Cir. 2001). "In claims in which there are no medical signs or laboratory findings to substantiate the existence of a medically determinable physical or mental impairment, the individual must be found not disabled at step 2 of the sequential evaluation process . . . ." SSR 96-4p, 61 Fed. Reg. 34488-01, 34489 (July 2, 1996). "Omissions at step two are harmless if the ALJ's subsequent evaluation considered the effect of the impairment omitted at step two." *Harrison v. Astrue*, No. 10-6120-MO, 2011 WL 2619504, at *7 (D. Or. July 1, 2011) (citing *Lewis v.. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007)).

A.    Incontinence

Plaintiff asserts error in the ALJ's finding that plaintiff's incontinence was undiagnosed and was not supported by substantial evidence in the record.   Christopher Gilbert, a medical resident at Family Medicine of Southwest Washington, made the diagnosis of incontinence. Tr. 218–20. Defendant replies Christopher Gilbert is a resident, which is not an acceptable medical source under 20 C.F.R. § 416.913(a), and that even if plaintiff had urinary incontinence, any error the ALJ made

at step two was harmless because (1) plaintiff prevailed at step two and (2) the RFC assessment accommodated the limitations caused by this impairment.

Only "acceptable medical sources" can diagnose and establish the existence of a medical impairment. *Ukolov v. Barnhart*, 420 F.3d 1002, 1006 (9th Cir. 2005); 20 C.F.R. § 416.913(a); *see also* SSR 06–03p, *available at* 2006 WL 2329939, *1–2. Acceptable medical sources include licensed physicians as well as certain licensed specialists for the limited purpose of establishing disorders related specifically to their specialties, such as optometrists for visual disorders and podiatrists for foot and ankle impairments. 20 C.F.R. § 416.913(a). Once an acceptable medical source establishes the existence of an impairment, evidence from other sources may show the severity of the impairment and how it affects plaintiff's ability to work. *Id.* § 416.913(d).

The only reference to plaintiff's incontinence in the ALJ's decision was in relation to a consultative medical examination with Dr. Lance Brigman, M.D. (discussed in more detail below). The ALJ stated that plaintiff "also alleged bladder incontinence, with no medical diagnoses in the record." Tr. 20.  Plaintiff was assessed with incontinence several times in the record, and at least once by Dr. Olivia Wright, an acceptable medical source.[2] Tr. 256 (on February 24, 2012, by Dr. Wright), tr.281, (on March 5, 2012, in unsigned treatment notes from Family Medicine of Southwest Washington, where Gilbert and Dr. Wright both work). Regardless, these assessments are not supported by anatomical, physiological, or psychological abnormalities shown by medically acceptable clinical and laboratory diagnostic techniques. Gilbert stated, "No obvious bladder

---

[2]In the record, Olivia Wright is referred to as both a registered nurse ("RN") and a physician. *Compare* tr. 247 (RN) with tr. 250, 257, 262, 335 (physician), 300 (M.D., "Dr."), tr. 307, 313, 317 (M.D.), tr. 319 (M.D., physician). She is overwhelmingly referred to as an M.D., physician, or doctor. In addition, defendant does not argue she is not an acceptable medical source. The Court therefore considers Wright to be Dr. Wright.

prolapse on exam and overall exam was unremarkable." Tr. 220. He nonetheless ordered a Urinalysis Dipstick, which also appeared within the normal ranges. Tr. 220, 221. In her assessment February 24, 2012, Dr. Wright wrote "[b]ack pain is concerning in that she has incontinence and neuropathic symptoms not otherwise explained. I think an MRI is warranted prior to her neurology appt. Will also have PT eval. If MRI normal, will send to urology for further eval." Tr. 256. Plaintiff has not directed the Court to any medically acceptable clinical or laboratory diagnostic techniques that evidence an anatomical, physiological, or psychological abnormality that might cause incontinence. The ALJ did not err by excluding  incontinence at step two.

      B.     Restless Leg Syndrome

Plaintiff also claims that the ALJ erred in finding that plaintiff's Restless Leg Syndrome ("RLS") was not a severe impairment. Plaintiff states the ALJ dismissed her RLS because it was "without medical etiology or formal diagnosis." Tr. 21. Plaintiff argues that this finding is not supported by substantial evidence because she was, in fact, diagnosed with RLS.  Defendant concedes that the ALJ's statement that plaintiff's RLS was "without medical etiology or formal diagnosis" was inaccurate.  However, defendant argues the ALJ's basis for finding plaintiff's RLS not severe was that the impairment did not satisfy the durational requirement.  Defendant also contends that the error was harmless because the RFC assessment adequately accounted for the limitations plaintiff alleged due to RLS.

To be considered severe, an impairment must either be expected to result in death, have lasted for a continuous period of at least 12 months, or be expected to last for a continuous period of at least 12 months. 20 C.F.R. § 416.909. Defendant argues plaintiff's RLS was first diagnosed by an acceptable medical source in March 2012,  when plaintiff was treated by neurologist

Edward Olson, M.D. Tr. 300–01. There is no indication in the record, however, that the RLS was not expected to last for a continuous period of at least 12 months. In addition, the record demonstrates that plaintiff had been experiencing RLS symptoms at least nine months before being diagnosed by Dr. Olson. Tr. 242 (June 17, 2011). The ALJ's reason for omitting RLS from the step-two determination was therefore error.

However, this error was harmless. The omission of RLS "could only have prejudiced [plaintiff] in step three (listing impairment determination) or step five (RFC) because the other steps, including this one, were resolved in her favor." *Burch*, 400 F.3d at 682. Regarding step three, RLS is not a separately listed impairment. *See* 20 C.F.R. pt. 404, subpt. P, app. 1. Plaintiff does not argue how adding RLS combines to meet or equal a listed impairment. *See Burch*, 400 F.3d at 682–83 (plaintiff bears burden of proving her impairment meets or equals the criteria listed in the appendix).

As for step five, plaintiff argues her RLS impairs her ability to sleep, causing continual fatigue and an inability to respond appropriately in work situations. Pl.'s Reply 5. Plaintiff asserts the ALJ's failure to consider this fatigue at step five was  prejudicial error. At the hearing, plaintiff testified that RLS felt "[l]ike thousands of needles hitting my leg at once. Uncontrollably I have to kick them . . . and sometimes my feet will burn." Tr. 53. She said if she is seated when the symptoms begin, they are relieved when she stands and walks around for about ten minutes. *Id.* When asked whether the symptoms occur during the day, night, or both, plaintiff replied "[d]uring the day and night, mostly during the day though." *Id.* She further testified that "sometimes at night if the medicine doesn't help, my legs will – I'll have the restless legs." *Id.*

Plaintiff's testimony regarding her RLS symptoms, even without considering the

credibility of those statements, evince a minimal limitation that is relieved when she stands and walks for a short period. Furthermore, although plaintiff argues in her brief that her symptoms interfere with her ability to sleep and thereby work, her own testimony provides that the symptoms occur "mostly during the day[,]" and only "sometimes at night if the medicine doesn't help . . . ." Thus the ALJ did not err by failing to consider these minimal limitations at step five. *See Webb v. Barnhart*, 433 F.3d 683, 686–87 (9th Cir. 2005) (internal quotation marks omitted) ("An impairment or combination of impairments may be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.")

Alternatively, because RLS caused only minimal limitations, the ALJ sufficiently accounted for them at step five. At the hearing, the VE testified that a hypothetical person with plaintiff's age, education, work experience, and RFC would be able to perform the requirements of a survey worker, an office cleaner, and a mail clerk, jobs that exist in the national and local economy. Tr. 58–59. The ALJ further asked whether the three jobs presented in the hypothetical allowed for a sit/stand option, and the VE testified "the mail clerk and the survey worker could accommodate that[,]" as would an electrical assembler position. Tr. 59–60. Plaintiff testified that the RLS symptoms are relieved when she stands and walks for a short period, and she would be permitted to do so as a mail clerk, survey worker, and electrical assembler. Those jobs exist in significant numbers in the national and local economy, thus the ALJ did not err regarding plaintiff's RLS at step five.

C.    Carpal Tunnel Syndrome

Plaintiff's final step-two argument is that the ALJ erred by not considering her Carpal

Tunnel Syndrome ("CTS") a severe impairment. Like RLS, the ALJ found plaintiff's CTS to be "without medical etiology or formal diagnosis." Tr. 21.

As an initial matter, plaintiff did not assert CTS as a condition that limits her ability to work until the hearing. In her initial application, plaintiff listed back pain, high blood pressure, overactive bladder, plantar fasciatus, depression, and obesity. Tr. 167. In her first appeal form, she listed peripheral neuropathy in both feet and hands and RLS as "new illnesses, injuries, or conditions since [she] last completed a disability report . . . ." Tr. 198. In her second appeal form, she stated, "The pain in my back is getting worse, and I do not have any insurance, and I need to have x-rays and MRI's done. I am not currently taking any medications. My leg swells and back pain [*sic*]." Tr. 208. She also stated, "My foot is swelling more, and I am having more weird sensations in my leg, almost a crawling effect." *Id.* Chronologically, the first mention of CTS in the administrative record is when plaintiff's attorney questioned her at the hearing. Tr 55. Counsel asked "you were recently diagnosed with carpal tunnel syndrome, is that correct?" to which plaintiff replied, "Yes . . . [b]oth hands but my right hand is the worst." *Id.*

Despite the fact that plaintiff did not allege CTS as an impairment until the hearing, the ALJ nevertheless considered plaintiff's CTS in his decision, finding it not severe because, like RLS, it was "without medical etiology or formal diagnosis." Tr. 21. However, also like RLS, the ALJ's reason for finding CTS non-severe was also error because plaintiff was diagnosed with CTS in May 2012. Tr. 329–30. Similarly, there is no indication in the record that plaintiff's CTS would not last a continuous 12 month period.

Regardless, the ALJ's error regarding CTS was harmless. Plaintiff testified at the hearing that when she turns her hands, they "tighten and get really stiff and hard to bend and move."

Tr. 55. She continued that she "cannot hold things . . . [or] feel things a lot of the time due to it because [her] hand is numb and tingles." *Id.* Plaintiff also testified, however, that she combs her hair, cooks simple meals, helps with laundry, and, vacuums. TR.45-46. The ALJ limited plaintiff to less than the full range of light work, with lifting and carrying "up to 10-pounds frequently and up to 20-pounds occasionally." Tr. 23. This limitation is consistent with plaintiff's testimony regarding her daily activities. Thus the ALJ's RFC assessment accounted for the limitations plaintiff alleges arose from her CTS and any error was therefore harmless.[3] *Harrison*, 2011 WL 2619504, at *7 (citing *Lewis*, 498 F.3d at 911).

II.    <u>Medical Opinion Evidence</u>

Plaintiff next argues the ALJ failed to give specific and legitimate reasons, supported by substantial evidence, to reject the opinion of examining physician Dr. Lance Brigman, M.D. "There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009). "Treating physicians" treat the claimant, "examining physicians" examine but do not treat the claimant, and "nonexamining physicians" neither examine nor treat the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). An ALJ generally must accord greater weight to the opinion of a treating physician than to that of an examining physician. *Id.* The ALJ must also generally give greater weight to the opinion of an examining physician over that of a reviewing physician. *Id.* If two opinions conflict, an ALJ must

---

[3]Because the ALJ accounted for the limitations caused by plaintiff's CTS, the Court need not decide whether the ALJ should have considered the CTS to be a severe, as opposed to a non-severe, impairment. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008) (citing Social Security Ruling ("SSR") 96–8p (1996)) ("The ALJ is required to consider all of the limitations imposed by the claimant's impairments, even those that are not severe.").

give "specific and legitimate reasons" for discrediting a treating physician's opinion in favor of an examining physician's opinion. *Id.* The ALJ may reject physician opinions that are "brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). The opinion of a reviewing physician "cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Lester*, 81 F.3d at 831 (emphasis original).

Dr. Brigman performed a consultative medical examination of plaintiff on June 30, 2011. Tr 234–38. In the report generated as a result of this examination, Dr. Brigman lists the various problems plaintiff related to him, then states that his review of plaintiff's systems was "[o]therwise unremarkable except for some shortness of breath on exercise." Tr. 235. Dr. Brigman also conducted a physical examination of plaintiff's musculoskeletal system, noting everything was normal. Tr. 236. Regarding plaintiff's lower extremities and back, Dr. Brigman wrote plaintiff

> can also heel walk and toe walk and assume the Trendelenburg position. She has absent patellar and Achilles reflexes bilaterally. She has decreased sensation to touch to just below both her knees bilaterally. She can however feel pinprick. She has good mobility of her knees, feet and ankles. There is little tenderness over the left plantar fascia noted.

*Id.* Notably, Dr. Brigman stated, "There were no laboratory tests or x-rays to reveal [*sic*]." *Id.* As for exertional work capabilities, Dr. Brigman wrote:

> LIFTING: She states that she can only lift about five pounds at one time and if she even tries that she states that she will lose control of her bladder and wet her pants. Also she states that her back will bother her. She does not feel like she can do any frequent lifting because of the incontinence and her back. SITTING: She states that she can sit for about 10 minutes and then would have to get up. That

Page 13 - FINDINGS AND RECOMMENDATION

> is because of her back and also because of her neuropathy. STANDING: She can stand about five to ten minutes she states, but then would have to get back down because of her back and her neuropathy. WALKING: She can walk about a block. In an eight hour she states she can stand off and on for about two hours and sit off and on for two hours.

*Id.* Dr. Brigman lastly summarized his report, stating "[h]er objective findings are her lack of patellar and Achilles reflexes in her lower extremities and her decreased ability to feel touch up to her knees in her lower extremities, which would tend to corroborate her peripheral neuropathy, and also her morbid obesity." *Id.*

The ALJ gave Dr. Brigman's evaluation little weight because "the overall record does not support those limitations" in Dr. Brigman's capacity assessment. Tr. 21. Also, Dr. Brigman's "diagnoses and work capacity assessments are entirely derived from the claimant's non-credible anecdotal claims and not objective." Tr. 24. The parties agree Dr. Brigman's opinion was contradicted by state agency physicians and thus the ALJ need only provide specific and legitimate reasons, supported by substantial evidence, to reject it. Pl.'s Br. 10; Def.'s Br. 15–16.

Plaintiff argues *Ryan v. Commissioner of Social Security*, 528 F.3d 1194 (9th Cir. 2008), compels the Court to reverse the ALJ's decision because, like the physician in *Ryan*, Dr. Brigman did not disbelieve plaintiff and provided objective evidence to support his assessment. In *Ryan*, the ALJ gave similar reasons for rejecting the opinion of an examining physician: it was (1) based on the plaintiff's subjective complaints and (2) inconsistent with the records of the plaintiff's treating physician. *Id.* at 1199. The district court upheld the Commissioner's decision denying benefits but the Ninth Circuit reversed, stating "an ALJ does not provide clear and convincing reasons for rejecting an examining physician's opinion by questioning the credibility

Page 14 - FINDINGS AND RECOMMENDATION

of the patient's complaints where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations." *Id.* at 1199–1200.

*Ryan* is distinguishable from this case for several reasons. First, Dr. Brigman's opinion is controverted and thus the ALJ need only provide specific and legitimate reasons to reject his opinion. Tr. 73, 86; *Lester*, 81 F.3d at 830;  Pl.'s Br. 10. In addition, the physician in *Ryan* did not indicate that his opinion was based on the plaintiff's subjective complaints. *Ryan*, 528 F.3d at 1199. Here, Dr. Brigman specifically noted that each exertional limitation noted was based on plaintiff's own statements, noting in the exertional work capabilities section that "she states" and "she does not feel . . . ." Tr. 236. Furthermore, in *Ryan* one of the ALJ's reasons was simply false: although the ALJ stated there were inconsistencies between the examining and treating physicians' opinions, there were not. *Id.* at 1200–01. Here, the ALJ wrote Dr. Brigman's opinion is not supported by the overall record, and the Court does not disagree.

First, Dr. Brigman's own examination of plaintiff does not support his capacity assessment. Dr. Brigman repeats plaintiff's claim that she could not lift five pounds, however his examination of plaintiff revealed "normal manual dexterity and good grip bilaterally." Tr. 236. A conflict between examination notes and a provider's opinion is an adequate reason to give less weight to the opinion of that provider. *See Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) (discussing treating physician). Second, as the ALJ noted, Dr. Brigman reported plaintiff can only sit for ten minutes at a time, but plaintiff sat through the 45 minute hearing. Tr. 23, 236. In addition, around the time plaintiff saw Dr. Brigman, she reported to Dr. Wright that she was "[u]sing Wii and dancing with lots of hand motions." Tr. 244. A conflict between a provider's opinion on the plaintiff's ability to engage in daily activities and the plaintiff's actual daily

activities "may justify rejecting a . . . provider's opinion." *Ghanim*, 763 F.3d at 1162. Third, as noted above regarding the standard of review, state agency physicians assessed plaintiff with much fewer limitations than those in Dr. Brigman's report. For instance, they noted plaintiff was capable of sitting for longer than six hours in a workday, and able to stand or walk for about six hours. Tr. 73, 86. They also assessed plaintiff as able to lift 20 pounds occasionally and ten pounds frequently. *Id.* Although these assessments were made by non-examining physicians and alone would not provide a specific and legitimate reason to reject the opinion of Dr. Brigman, an examining source, the disparity between the assessments combined with the lack of support in the rest of the record provides a specific and legitimate reason to give little weight to Dr. Brigman's opinion. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (citing *Magallanes v. Bowen*, 881 F.2d 747, 752 (9th Cir. 1989)). Thus the overall record does not support Dr. Brigman's evaluation regarding plaintiff's exertional work capabilities.

        Plaintiff argues Dr. Brigman's finding that plaintiff lacked "patellar and Achilles reflexes in her lower extremities and her decreased ability to feel touch up to her knees in her lower extremities" provides objective support for the limitations in his evaluation. However, Dr. Brigman specifically notes that these findings "tend to corroborate her peripheral neuropathy, and also her morbid obesity[,]" and does not note that they corroborate the limitations provided in his report, which were based entirely on plaintiff's subjective complaints. Tr. 236. In addition, the ALJ found plaintiff's peripheral neuropathy and obesity, which is supported by Dr. Brigman's examination, to be collectively severe.

        In sum, the ALJ provided specific and legitimate reasons, supported by substantial evidence, to give little weight to the consultative evaluation provided by Dr. Brigman. There was

no error.

III.    Plaintiff's Credibility

Plaintiff lastly argues that the ALJ erred by failing to give clear and convincing reasons for rejecting plaintiff's subjective complaints. The ALJ must consider all symptoms and pain which "can be reasonably accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 416.929(a). Once a claimant shows an underlying impairment which may "reasonably be expected to produce pain or other symptoms alleged," absent a finding of malingering, the ALJ must provide "clear and convincing" reasons for finding a claimant not credible. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (citing *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)).

A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 345–46 (9th Cir. 1991) (en banc)). The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d at 1284.

The ALJ may additionally employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements regarding symptoms by the claimant. *Id*. The ALJ may not,

however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

Here, the ALJ found plaintiff, including her statements concerning the intensity, persistence, and limiting effects of her symptoms, not entirely credible. Tr. 23 Those findings were specific, clear, convincing, and supported by substantial evidence in the record. First, as evidenced below, the ALJ specified which statement "is not credible and what evidence suggests the complaints are not credible." *Dodrill*, 12 F.3d at 918. In addition, the ALJ provided clear and convincing reasons for discrediting many specific statements as well as plaintiff's credibility overall. As noted above, the ALJ found plaintiff's statement that she cannot sit for more than five to ten minutes at a time not credible because he observed her sitting through the 45-minute hearing and because she also testified that she "sits around for two hours" upon waking up every day. Tr. 23, 46. Conflicts between a claimant's testimony and the ALJ's observation of her conduct can be a clear and convincing reason to reject that claimant's subjective testimony as to severity of symptoms. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). The ALJ found plaintiff's report of daily activities to lack credibility because although she testified since she stopped walking her two small dogs, she "doesn't do anything else[,]" she also testified that she "cares for [the] dogs, . . . reads books her mother buys for her[,] cooks simple meals for herself, does dishes and laundry and sometimes, makes the bed." Tr. 23. Activities of daily living may be used to discredit a claimant where they either "are transferable to a work setting" or "contradict claims of a totally debilitating impairment." *Molina v. Astrue*, 674 F.3d 1104, 1112–13 (9th Cir. 2012). Plaintiff's inconsistent description of her daily activities, as well as

those daily activities she described doing, provide another clear and convincing reason for discrediting her testimony.[4]

The ALJ found plaintiff's credibility "also eroded by her terrible earnings history, having never reached earnings at the minimal SGA levels." Tr. 24. A poor work record is another valid reason for an adverse credibility finding. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). Plaintiff argues that finding is not supported by substantial evidence because she originally alleged an onset date of 1984, but amended it "because of the [sparsity] of medical records to support her claim from that time period, not because she was able to work up until she filed her application." Pl.'s Br. 13. Both interpretations of the evidence are rational, and thus the court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation." *Burch*, 400 F.3d at 680–81 (citing *Magallanes*, 881 F.2d at 750).

Not all of the reasons the ALJ provided for discrediting plaintiff were valid or supported by substantial evidence in the record. For instance, the ALJ found plaintiff's statement that she watches no television and does not use the computer not credible because she told her doctor she

---

[4] The ALJ also stated,

> In her testimony, even on direct questioning, the claimant specifically stated and repeated that she has a live-in "roommate," not a boyfriend. However, in the consultative psychological evaluation with Dr. Carter in May 2011, she reported she "lives with her boyfriend," and that they have "been together for almost nineteen years and their relationship is 'awesome.'" The claimant's credibility is seriously eroded by her contrary reports regarding her significant other of now almost 20-years.

Tr. 24. Plaintiff concedes that "the ALJ's conclusion as to the relationship with her roommate may be sound[.]." Pl.'s Br. 12. This is another internal inconsistency that provides a clear and convincing reason to discredit her testimony. *See Smolen*, 80 F.3d at 1284.

used the computer for 30 minutes a day. Tr. 24. Plaintiff also testified, however, that she no longer uses the computer because she can no longer afford to pay for internet. Tr. 50. In addition, the ALJ found plaintiff's pain testimony not credible because "her immediate memory for detail was quite good, as she recited the names and dosages of eight medications she is allegedly taking." Tr. 24. The hearing transcript reflects plaintiff actually did not recite the names and dosages of her medications by memory but rather read that information from a written list she had brought to the hearing. Tr. 41. In any event, these errors are harmless because the ALJ provided numerous specific, clear, and convincing reasons, supported by substantial evidence, for his credibility determinations.

As a result, the ALJ provided clear and convincing reasons, supported by substantial evidence, for rejecting plaintiff's subjective symptom statements. The ALJ's credibility finding should be affirmed.

## RECOMMENDATION

For the foregoing reasons, the Commissioner's decision should be AFFIRMED and this case should be DISMISSED.

## SCHEDULING ORDER

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due within fourteen days of service of these Findings and Recommendations. If no objections are filed, review of the Findings and Recommendation

Page 20 - FINDINGS AND RECOMMENDATION

will go under advisement on that date.

If objections are filed, a response to the objections is due fourteen days after the date the objections are filed and the review of the Findings and Recommendation will go under advisement on that date.

IT IS SO ORDERED.

DATED this 10th day of June, 2015.

　/s/ Patricia Sullivan　　　

Patricia Sullivan

United States Magistrate Judge